IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL D. HORTON, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>WARDEN, FCI MCKEAN, )<br>    Respondent. ) | Civil Action No. 18-151 Erie<br><br>Judge Susan Paradise Baxter |

## MEMORANDUM

Pending before the Court[1] is a petition for a writ of habeas corpus filed by federal prisoner Michael D. Horton ("Petitioner") pursuant to 28 U.S.C. § 2241. (ECF No. 4). He is challenging the sentence imposed upon him by the United States District Court for the Southern District of Ohio. He asks this Court to vacate that sentence and order that he be resentenced. For the reasons set forth below, the petition is dismissed for lack of subject matter jurisdiction.

**A.    Relevant Background**

In 2003, a grand jury in the United States District Court for the Southern District of Ohio (the "sentencing court") returned a two-count indictment against Petitioner. He was indicted for distributing a quantity of heroin that caused serious bodily injury and the death of William Kevin Kelley, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One), and for conspiring to possess with the intent to distribute heroin, cocaine base, and Xanax that caused the death of another, in violation of 21 U.S.C. § 846 (Count Two). Under § 841(b)(1)(C), a mandatory 20-year sentence must be imposed "if death or serious bodily injury results" from the use of heroin.

---

[1] On September 14, 2018, the undersigned was sworn in as a United States District Judge. This action was reassigned to this Court's docket on September 21, 2018.

1

Petitioner states that "Count Two of the indictment did not specifically allege that [he] caused the death of Mr. Kelley. However, such was alleged as an overt act of the conspiracy, which alleged that Mr. Kelley died, in Dayton, Ohio, as a result of ingesting the heroin that [Petitioner] allegedly sold him." (ECF No. 9 at 3 n.2). On September 21, 2005, following three days of trial proceedings, Petitioner pleaded guilty to Count Two of the indictment.

On September 29, 2005, the Presentence Investigation Report ("PSI") was prepared. Petitioner, who was represented by counsel, subsequently filed a *pro se motion* to withdraw his plea. At a hearing held on December 16, 2005, the sentencing court discussed with Petitioner his concerns and it was explained to him that, to the extent there was any confusion, he in effect pleaded guilty to the overt act of killing Kelley. (ECF No. 9 at 6-7) (quoting Hr'g Tr., 12/16/05, at 9-10). According to Petitioner:

> The Court then stated that the plea agreement clearly states the minimum sentence; that the Court was not bound by that and could in fact go higher, but in the admitted statement of fact, *[he] admitted that he caused the death of another through the heroin that he had sold.* The Court also stated that it personally did not see manipulation [on the part of the Government], that in hindsight, the plea agreement and the PSI could have been a little more specifically worded. Consequently, the Court concluded that since [Petitioner] was facing a long sentence, he deserved to feel like he was being treated fairly, so the Court delayed the matter for a week to discuss the matter further.

(Id. at 7) (citing Hr'g Tr., 12/16/05, at 9-10) (emphasis added).

At a subsequent hearing held on December 21, 2005, the sentencing court stated:

The defendant has filed objections, which I dealt with when we were together on Friday. The defendant's objections are overruled….

*The defendant makes comment that he did not admit to causing the death of another and yet reference to the statement of facts read during the taking of the plea and admitted to by the defendant under oath, that in effect one of the individuals who purchased heroin did in fact die as a result of the ingestion.* Accordingly, the Court would overrule the defendant's objections to the presentence report.

(Id. at 9-10) (quoting Sent. Hr'g Tr., 12/21/05, at 3-4).

2

Petitioner then advised the sentencing court that he still wanted to withdraw his plea. (Id.) According to Petitioner:

> After placing [Petitioner] under oath, the [sentencing court] asked him why he should be allowed to withdraw his plea. Again, [Petitioner] expressed his confusion about accepting a plea to Count Two of the indictment what [sic] included the death of Mr. Kelley. [Petitioner] specifically stated that had he known he was being held accountable[ ] for something that he did not do, he would not have pled guilty, but would have continued on with the trial. The [sentencing court] overruled [Petitioner's] motion to withdraw his plea agreement[.]

(Id. at 10) (citing Sent. Hr'g Tr. at 4). The sentencing court imposed the mandatory minimum term of 20 years of imprisonment pursuant to § 841(b)(1)(C).

In his direct appeal to the United States Court of Appeals for the Sixth Circuit, Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). In response to his counsel's motion, Petitioner argued that the sentencing court improperly sentenced him because his indictment was defective for failing to include the term "if death results" in Count Two. The court of appeals granted counsel's motion to withdraw and affirmed Petitioner's judgment of conviction and sentence. It held:

> Upon review, we conclude that the [sentencing] court properly sentenced [Petitioner]. The [sentencing] court did not engage in judicial fact-finding concerning whether [Petitioner] had engaged in conduct that resulted in the death of another person. *Rather, [Petitioner] was specifically charged with and admitted such conduct. During his plea hearing, [he] admitted his guilt in open court and acknowledged that he had sold heroin to two individuals, one of whom died after ingesting the heroin. [Petitioner's] argument that he is innocent of conspiring to distribute drugs which caused the death of another person do[es] not entitle him to relief.* See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (where a defendant solemnly declares his guilt in open court, protestations of innocence may be summarily rejected). Furthermore, because [Petitioner] pled guilty to conduct that resulted in death, the district court properly sentenced him to the statutory minimum of 240 months of imprisonment under § 841(b)(1)(C).
> - - -
> Finally, contrary to [Petitioner's] argument, his indictment was not defective. [Petitioner] essentially argues that his indictment is defective because count 2 did not contain language that his offense resulted in the death of another. He maintains that his guilty plea did not waive this "jurisdictional defect" and that he did not "waive his right to

3

an indictment." However, *a review of the indictment reflects that the sections of count 2, entitled "manner and means" and "overt act" clearly charge that [Petitioner] conspired to distribute heroin and that it resulted in the death of William Kevin Kelley.* Moreover, [Petitioner] is not entitled to relief on this claim, because he did not file a pretrial motion challenging the indictment based on any defect contained within count 2. *See* Fed. R. Crim. P. 12(b)(3)(B).

(ECF No. 4-1 at 7-9).

In 2008, Petitioner filed a motion to vacate his sentence under 28 U.S.C. § 2255. The Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review, noting: "It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)). "Indeed, 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" Id. (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court explained that "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 474 U.S. at 56 (internal quotations and citations omitted). It made clear that Strickland's two-part (deficient performance and prejudice) standard for evaluating claims of ineffective assistance of counsel, which it had adopted the previous year, applied to claims in which a petitioner is attacking the voluntary and intelligent character of his guilty plea on the grounds that the advice he received from counsel was deficient. Id. at 58-59.

In his § 2255 motion, Petitioner argued that his trial counsel was ineffective for advising him to "plead guilty to Count 2, even though [he] would be sentenced based on conduct associated with Count 1[,]" and that "the government had breached the plea agreement by seeking a sentence that took into account related conduct from the dismissed count [Count 1]." (Resp's Ex. 3 at 1). The sentencing court

4

denied Petitioner's claims. (Id.) In its subsequent order denying Petitioner a certificate of appealability, the Sixth Circuit Court of Appeals held:

> First, [Petitioner] did not make a substantial showing that counsel rendered ineffective assistance. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Strickland v. Washington, 466 U.S. 668, 687 (1984). *[Petitioner] pleaded guilty pursuant to a plea agreement that clearly advised him that he would be sentenced to the mandatory minimum for his offense.* There was no improper judicial fact finding that enhanced [his] sentence. For this same reason, the record reflects that the government did not breach the plea agreement.

(Order at 2, Horton v. United States, No. 08-4223 (6th Cir. Feb. 17, 2009) (emphasis added), available on PACER).

Several years later, in the 2014, the United States Supreme Court decided Burrage v. United States, 571 U.S. 204 (2014). It that case, the defendant was charged with unlawfully distributing heroin and that "death resulted from the use of that substance," thus subjecting him to the 20-year mandatory minimum of § 841(b)(1)(C). At his trial, medical experts testified that heroin was a "contributing" factor in the victim's death. Id. at 207. The district court denied the defendant's motion for judgment of acquittal, which argued that the victim's death did not "result from" heroin use because there was no evidence that heroin was a but-for cause of death, and it also denied his request that the jury receive his proposed instructions regarding causation. Id. at 207-08. One of his proposed instructions required the Government to prove that heroin use "was the proximate cause" of the victim's death, and the other "would have defined proximate cause as 'a cause of death that played a substantial part in bringing about death,' meaning that '[t]he death must have been either a direct result of or a reasonably probable consequence of the cause and except for the cause the death would not have occurred.'" Id. at 208. Instead, the district court "gave an instruction requiring the Government to prove 'that the heroin distributed by the Defendant was a contributing cause of [the victim's] death.'" Id. In its decision affirming the defendant's judgment, the Court of Appeals for the Eighth Circuit held that his proposed

5

jury instructions did "not correctly state the law" because "a showing of proximate cause is not required." Id.

The Supreme Court granted certiorari and considered "[w]hether the defendant may be convicted under the 'death results' provision…when the use of the controlled substance was a 'contributing cause' of the death." Id. It explained that "[t]he Controlled Substances Act does not define the phrase 'results from,' so we give it its ordinary meaning[,]" id. at 210, which it interpreted to "impose[ ] a requirement of but-for causation." Id. at 214; id. at 217 (Congress "chose…to use language that imports but-for causality. Especially in the interpretation of a criminal statute subject to the rule of lenity, we cannot give the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant.") (internal citation omitted). It held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Id. at 218-19. It additionally held that "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt" in accordance with Alleyne v. United States, 133 S. Ct. 2151, 2162-63 (2013) and Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Id. at 210.[2]

Because Petitioner has already litigated one § 2255 motion to vacate his sentence, before he can file another one he must first receive authorization from the Sixth Circuit Court of Appeals. This is in

---

[2] In October 2014, approximately nine months after the Supreme Court decided Burrage, the sentencing-court judge wrote a letter, ECF No. 4-1 at 13-15, to the United States Department of Justice in support of Petitioner's Petition for Commutation of Sentence/Executive Clemency, which was ultimately unsuccessful. In the letter, the judge explained that because Petitioner entered his guilty plea mid-trial "it is extraordinarily difficult to predict how the jury would have ruled on the count to which [he] pled guilty." Id. at 14. He wrote, however, that "I sincerely believe that if the facts of [Petitioner's] offense had occurred today," under Burrage "the government would have had a very difficult time proving [his] guilt, assuming, arguendo, that the government would have brought such a charge in the first instance." Id. The judge acknowledged that he was only speculating. Id.

6

accordance with the 1996 amendments that the Antiterrorism and Effective Death Penalty Act ("AEDPA") made to § 2255, which bar a federal prisoner from filing a second or successive § 2255 motion unless the appropriate court of appeals first certifies the filing contains a claim based on either:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). See also 28 U.S.C. § 2244(a).

In 2015, Petitioner filed in the Sixth Circuit Court of Appeals an application for authorization to file a second or successive motion in which he argued that: (1) in light Burrage, his sentence was improperly enhanced based on the alleged fact that he distributed heroin that resulted in the death of another, even though it was not established that the drug was the "but-for" cause of the death; and, (2) in light of Alleyne, his sentence was improperly based on facts not proven to a jury beyond a reasonable doubt. He also reasserted his "previous claims that: (3) counsel improperly advised him to plead guilty to Count 2, even though [Petitioner] would be sentenced based on conduct associated with Count 1; and (4) the government breached the plea agreement by seeking a sentence that took into account related conduct from the dismissed count." (Resp's Ex. 3 at 2).

On July 1, 2015, the court of appeals denied Petitioner's application, holding:

> [Petitioner's] claims that counsel was ineffective by advising him to plead guilty and that the government breached the plea agreement must be dismissed because they were raised in a prior §2255 motion. See Charles v. Chandler, 180 F.3d 753, 758 (6th Cir. 1999). [Petitioner's] remaining claims do not satisfy the requirements for granting authorization to file a second or successive § 2255. The claims do not rely on newly discovered evidence sufficient to establish that no reasonable factfinder would have found him guilty of the charged offense. Nor do they rely on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. First, the decision in Burrage, in which the Supreme Court held that a defendant was not subject to an enhanced sentence if the drug that the defendant

7

distributed was not "an independently sufficient cause of the victim's death or serious bodily injury," set forth a new rule of statutory interpretation not a new rule of constitutional law that is retroactive to cases on collateral review. Burrage, 134 S. Ct. at 892. Second, the Supreme Court has not made its holding in Alleyne retroactively applicable to cases on collateral review. See In re Mazzio, 756 F.3d 487, 489-90 (6th Cir. 2014).

(Id. at 3).

In July 2017, Petitioner filed with the Sixth Circuit Court of Appeals another motion for an order authorizing him to file a second or successive § 2255 motion in the sentencing court, reasserting that his sentence is invalid under Burrage and Alleyne. The court of appeals issued an order deny his request on March 15, 2018. (Resp's Ex. 4).

Petitioner is incarcerated at FCI McKean, which is located within the territorial boundaries of this Court. His release date, as reflected on the BOP's website, is currently set at October 18, 2021. Pending before this Court is his petition for a writ of habeas corpus, which he filed under 28 U.S.C. § 2241. (ECF No. 4; Brief in Support ECF No. 9). He contends that he is "actually innocent of the 'death results' penalty enhancement[,]" and, therefore, this Court has jurisidiction to consider his claim under § 2255's savings clause, which is discussed below. (ECF No. 9 at 2). In the answer, Respondent contends that this Court must dismiss the petition for lack of subject matter jurisdiction. (ECF No. 13). Petitioner filed a reply (ECF Nos. 14, 15), Respondent filed a sur-reply (ECF No. 18), and Petitioner filed a response (ECF No. 21).

**B.     Discussion**

For federal prisoners, "[t]he 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010); see e.g., Cardona v. Bledsoe, 681 F.3d 533, 535-38 (3d Cir. 2012). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer

8

federal jurisdiction over habeas petitions filed by federal inmates." Cardona, 681 F.3d at 535. Section 2255 motions must be filed in the federal district court that imposed the conviction and sentence the prisoner is challenging. 28 U.SC. § 2255(a). In contrast, a habeas corpus action pursuant to § 2241 must be brought in the custodial court (the federal district court in the district the prisoner is incarcerated). Bruce v. Warden Lewisburg USP, 868 F.3d 170, 178 (3d Cir. 2017).[3]

Importantly, "[m]otions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). As the United States Court of Appeals for the Third Circuit explained in Bruce v. Warden Lewisburg USP, 868 F.3d 170 (3d Cir. 2017), prior to § 2255's enactment, federal prisoners seeking habeas relief could only do so by filing a petition for a writ of habeas corpus in the federal district court in the district the prisoner was incarcerated. 868 F.3d at 178. "An increase in the number of federal habeas petitions produced serious administrative problems and overburdened the few district courts in the jurisdictions with major federal prisons." Id. (citing United States v. Hayman, 342 U.S. 205, 210-19 (1952)). To alleviate that burden, Congress in 1948 enacted § 2255:

> A new remedial mechanism, § 2255 "replaced traditional habeas corpus for federal prisoners (at least in the first instance) with a process that allowed the prisoner to file a

---

[3] Section 2241 petitions must be filed in the federal district court in the district the prisoner is incarcerated because:

> [t]he prisoner must direct his [§ 2241] petition to "the person who has custody over him." § 2242; see also Wales v. Whitney, 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277 (1885); Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 494-95, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Longstanding practice under this immediate custodian rule 'confirms that in habeas challenges to present physical confinement...the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." Rumsfeld v. Padilla, 542 U.S. 426, 435, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). And under the statute's jurisdiction of confinement rule, district courts may only grant habeas relief against custodians "within their respective jurisdictions." § 2241(a); see also Braden, 410 U.S. at 495, 93 S.Ct. 1123 ("[T]he language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian.").

Bruce, 868 F.3d at 178.

motion with the sentencing court on the ground that his sentence was, *inter alia*, imposed in violation of the Constitution or laws of the United States." Boumediene v. Bush, 553 U.S. 723, 774, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008) (internal quotation marks omitted). The statute's "sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." Hayman, 342 U.S. at 219, 72 S.Ct. 263; see also Hill v. United States, 368 U.S. 424, 427, 428 n.5, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (describing the § 2255 remedy as "exactly commensurate" with § 2241's writ of habeas corpus); United States v. Anselmi, 207 F.2d 312, 314 (3d Cir. 1953).

So it is that a federal prisoner's first (and most often only) route for collateral review of his conviction or sentence is under § 2255.

Id.

The Third Circuit Court of Appeals has explained that "§ 2241 confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but *the execution of his sentence*." Cardona, 681 F.3d at 535 (internal quotations and citations omitted) (emphasis added); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 243 (3d Cir. 2005) (defining "execution of" the sentence to mean "'put into effect' or carry out.'") This means that, except for the very limited circumstance discussed below, a federal prisoner incarcerated within the Third Circuit can litigate in a § 2241 habeas proceeding only two types of claims. The first type of claim is one that challenges conduct by the Federal Bureau of Prisons (the "BOP") that affects the duration of the prisoner's custody. For example, a prisoner can challenge in a § 2241 habeas proceeding the manner in which the BOP is computing his federal sentence, see, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990), or the constitutionality of a BOP disciplinary action that resulted in the loss of good conduct sentencing credits, see, e.g., Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008). The second type of claim is one that challenges BOP conduct that the prisoner contends "conflict[s] with express statements in the applicable sentencing judgment." Cardona, 681 F.3d at 536; McGee, 627 F.3d at 935-37; Woodall, 432 F.3d at 243.

Importantly, § 2255 expressly prohibits a court from entertaining a § 2241 petition filed by a federal prisoner who is raising the types of claims that must be raised in a § 2255 motion unless it "appears that the remedy by [§ 2255 motion] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). This provision of § 2255 is commonly referred to as the "savings clause." See, e.g., Bruce, 868 F.3d at 174, 178-79.

In its landmark decision In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997), the Third Circuit Court of Appeals recognized the one circumstance under which it has found § 2255's remedy to be inadequate of ineffective since AEDPA amended § 2255 in 1996 to include a one-year statute of limitations and the prohibition against the filing of second or successive motions. The petitioner in that case, Ocsulis Dorsainvil, was convicted, *inter alia*, of using a gun in connection with a drug crime under 18 U.S.C. § 924(c)(1). He was so convicted notwithstanding that he did not "use" the gun but the gun was merely present in the car from which the drugs were to be bought. After he had exhausted his appeals and litigated his first § 2255 motion, the Supreme Court in Bailey v. United States, 516 U.S. 137 (1995) construed the criminal statute under which Dorsainvil was convicted (18 U.S.C. § 924(c)(1)) to exclude from the ambit of the statute mere presence of a gun at a drug crime, thus arguably rendering him actually innocent of the crime of using a gun in connection with a drug offense.

After the Supreme Court issued Bailey, Dorsainvil applied to the court of appeals for authorization to file in the district court a second or successive § 2255 motion. The court had no choice but to deny his request because he could not satisfy AEDPA's gatekeeping requirements for the filing of a second or successive § 2255 motion. That was because the decision in Bailey was one of statutory construction and, therefore, did not constitute "a new rule of constitutional law…that was previously

11

unavailable[.]"[4] Dorsainvil, 119 F.3d at 247-48 (quoting 28 U.S.C. § 2255 (now at § 2255(h)). Under these circumstances, the court of appeals determined that Dorsainvil had established that § 2255 was "inadequate or ineffective" to test the legality of his detention and, as a result, he could bring his claim in a § 2241 habeas corpus petition:

> A similar case "involv[ing] the availability of collateral relief from a federal criminal conviction based upon an intervening change in substantive law" came before the Supreme Court in Davis v. United States, 417 U.S. 333, 334, 94 S. Ct. 2298, 2299, 41 L. Ed.2d 109 (1974). In that case, the Court stated that a Supreme Court decision interpreting a criminal statute that resulted in the imprisonment of one whose conduct was not prohibited by law "presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. at 346, 94 S. Ct. at 2304 (internal quotations omitted). The Court held that "if [petitioner's] contention is well taken, then [his] conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present[s] exceptional circumstances that justify collateral relief under § 2255." Id. at 346-47, 94 S.Ct. at 2304-05 (internal quotations omitted); see also United States v. Addonizio, 442 U.S. 178, 186-87, 99 S. Ct. 2235, 2240-41, 60 L. Ed.2d 805 (1979) (discussing Davis and observing that a refusal to have vacated his sentence "would surely have been a 'complete miscarriage of justice,' since the conviction and sentence were no longer lawful").
>
> The decision in Davis that § 2255 was broad enough to cover a defendant imprisoned for a crime that an intervening decision negates does not govern Dorsainvil's motion before us only because he has brought his claim for relief on a second § 2255 motion [subject to the gatekeeping provisions of AEDPA]. In the earlier part of this opinion, we construed the AEDPA to preclude our certification of a second § 2255 motion that relied on the intervening decision in Bailey as a basis for certification. Thus, Dorsainvil does not have and, because of the circumstance that he was convicted for a violation of § 924(c)(1) before the Bailey decision, never had an opportunity to challenge his conviction as inconsistent with the Supreme Court's interpretation of § 924(c)(1). If, as the Supreme Court stated in Davis, it is a "complete miscarriage of justice" to punish a defendant for an act that the law does not make criminal, thereby warranting resort to the collateral remedy afforded by § 2255, it must follow that it is the same "complete miscarriage of justice" when the AEDPA amendment to § 2255 makes that collateral remedy unavailable. In that unusual circumstance, the remedy afforded by § 2255 is "inadequate or ineffective to test the legality of [Dorsainvil's] detention."

---

[4] Whether Bailey could be applied "retroactively" to Dorsainvil was not an issue because it was a case of statutory construction. Bousley v. United States, 523 U.S. 614, 620-21 (1998). See also Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). The issue in Dorsainvil was what mechanism (a § 2255 motion or a § 2241 habeas petition) he could use, if any, to have his claim under Bailey heard by a court.

12

> There is no reason why § 2241 would not be available under these circumstances, provided of course that Dorsainvil could make the showing necessary to invoke habeas relief, an issue for the district court.

Id. at 250-51 (altered texted added by the court of appeals).

In its recent decision in Bruce, the Third Circuit Court of Appeals set forth the two conditions that a federal prisoner confined within the Third Circuit must satisfy post-Dorsainvil in order to have his case fall within § 2255's savings clause, explaining that that clause will apply only when "the prisoner has 'had no earlier opportunity *to challenge his conviction for a crime that an intervening change in substantive law may negate*.'" Id. (quoting Dorsainvil, 119 F.3d at 251) (emphasis added). "First, a prisoner must assert a 'claim of 'actual innocence' on the theory that 'he is being detained *for conduct that has subsequently been rendered non-criminal by an intervening Supreme Court decision' and our own precedent construing an intervening Supreme Court decision'*–in other words, when there is a change in statutory caselaw that applies retroactively in cases on collateral review." Bruce, 868 F.3d at 180 (emphasis added) (quoting United States v. Tyler, 732 F.3d 241, 246 (3d Cir. 2013), which quoted Dorsainvil, 119 F.3d at 252). "[S]econd, the prisoner must be 'otherwise barred from challenging the legality of the conviction under § 2255.'" Id. (quoting Tyler, 732 F.3d at 246).

Petitioner cannot satisfy the first condition. He contends that he is actually innocent, but his Burrage claim is not premised upon the theory he is being detained *for conduct that has been rendered non-criminal* by an intervening decision of statutory construction issued by the Supreme Court. Rather, his challenge is only to the term of the sentence his serving. The Third Circuit Court of Appeals has thus far declined to extend § 2255's savings clause to circumstances in which the petitioner is challenging his sentence, as opposed to arguing that he is actually innocent of the crime for which he was convicted. Gardner v. Warden Lewisburg USP, 845 F.3d 99, 103 (3d Cir. 2017) (petitioner could not challenge his sentence based upon Alleyne in a § 2241 habeas petition and rejecting the petitioner's argument that "if

13

Congress had intended to limit § 2255's savings clause only to 'actual innocence' claims, the legislature would have drafted the statute differently."); United States v. Doe, 810 F.3d 132, 160-61 (3d Cir. 2015) (noting in *dicta* that there is a circuit split and declining to decide which cases it believes to be correct); Okereke, 307 F.3d at 120-21 (Dorsainvil's interpretation of § 2255 provides only a narrow exception to its presumptive exclusivity, and holding that the petitioner could not challenge his sentence under Apprendi in a § 2241 habeas petition); Murray v. Warden Fairton FCI, 710 F. App'x 518, 520 (3d Cir. 2018) ("We have not held that innocence-of-sentence claims fall within the exception to the rule that habeas claims must be brought in § 2255 motions."), cert. denied sub nom. 138 S.Ct. 2007 (2018).

Additionally, Petitioner pleaded guilty to Count Two, his purported confusion about what he pleaded guilty to was addressed by the sentencing court, it denied his motion to withdraw his guilty plea, and the Sixth Circuit Court of Appeals affirmed that decision on direct appeal. In his 2008 § 2255 motion to vacate, Petitioner tried to avoid the consequences of his plea by claiming that his trial counsel provided him with ineffective assistance, but the sentencing court denied that claim and the Sixth Circuit Court of Appeals denied his request for a certificate of appealability. Then, in both 2015 and 2017, Petitioner applied to the Sixth Circuit Court of Appeals for authorization to file a second or successive § 2255 motion so that he could litigate Burrage and Alleyne claims, and on both occasions the court of appeals denied him authorization. The fact that the Sixth Circuit Court of Appeals has repeatedly denied his application for authorization to file a second or successive § 2255 motion is not, in and of itself, a sufficient ground to render § 2255 "inadequate or ineffective." Dorsainvil, 119 F.3d at 251 ("We do not suggest that § 2255 would be 'inadequate or ineffective' so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of [AEDPA's amendments to] § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255."); Cradle v. United States ex rel. Miner, 290 F.3d 536, 539 (3d Cir. 2002) (per

curiam) ("Section 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255.")

Petitioner also relies upon Harrington v. Ormond, 900 F.3d 246 (6th Cir. 2018), in which the Sixth Circuit Court of Appeals permitted a petitioner to litigate his Burrage claim in a § 2241 petition. The petitioner in Harrington (unlike in this case) was convicted after a jury trial, and the Sixth Circuit Court of Appeals remanded the case and ordered the district court to hold an evidentiary hearing to determine whether it is more likely than not that a reasonable jury would have convicted the petitioner if given the proper jury instruction. 900 F.3d at 248, 250.

This Court is not bound by Harrington. As Respondents point out, the Third Circuit Court of Appeals in numerous non-precedential opinions has found that a Burrage claim does not fall within § 2255's savings clause. (ECF No. 18 at 3-4, citing, *inter alia*, Lewis v. Warden Allenwood FCI, 719 F. App'x 92, 94-95 (3d Cir. 2017) ("The Supreme Court's decision in Burrage did not decriminalize the conduct for which [the petitioner] was convicted…. Accordingly, the District Court correctly concluded that [he] could not resort to §2241 to raise his legal claim[.]")). While those decisions are not precedential, they do demonstrate that on numerous occasions the Third Circuit Court of Appeals has had the opportunity to hold that a Burrage claim falls within § 2255(e)'s savings clause and it declined to do so. Most importantly, however, and as explained above, in its precedential decisions the Third Circuit Court of Appeals has thus far declined to extend § 2255's savings clause to circumstances in which the petitioner is challenging only his sentence, which Petitioner is doing here, as opposed to arguing that he

is actually innocent of the crime for which he was convicted. Gardner, 845 F.3d at 103; Okereke, 307 F.3d at 120-21.[5]

Finally, Petitioner request that, if this Court determines that it lacks jurisdiction, that it transfer this action to the sentencing court. When a district court lacks jurisidiction it can "in the interest of justice, transfer such action...to any other court...*in which the action or appeal could have been brought at the time it was filed*[.]" 28 U.S.C. § 1631. Transfer is not appropriate here because Petitioner could not have filed a § 2241 petition with the sentencing court.

**C.     Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is dismissed for lack of subject matter jurisdiction.[6] An appropriate Order follows.


Dated: March 31, 2020

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

---

[5]  Because the courts of appeals are split on how to apply § 2255(e)'s savings clause, it is well known that similarly-situated federal prisoners may receive different treatment by happenstance of the circuit in which they find themselves to be incarcerated. Bruce, 868 F.3d at 180-81. As the Third Circuit Court of Appeals recognized in Bruce, "by enacting § 2255 Congress sought to alleviate the inefficiencies that attend § 2241's immediate custodian and district of confinement rules. Now those difficulties have returned, though in a new form. And so they will remain, at least until Congress or the Supreme Court speaks on the matter." Id. at 181.

[6]  28 U.S.C. § 2253 sets forth the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the dismissal of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by Gonzalez v. Thaler, 565 U.S. 134 (2012).